UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VOELKEL MCWILLIAMS CONSTRUCTION, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 13-6789** |
| | * | |
| **84 LUMBER COMPANY, ET AL.** | * | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is Defendants', 84 Lumber Company, Hardy Holdings, Inc., and Pierce Hardy Real Estate Inc. ("84 Lumber"), motion to dismiss, or alternatively motion to strike certain claims in the amended complaint as untimely, or alternatively to continue trial. (Rec. Doc. 52).  The Court ruled on this motion at the conclusion of oral argument and now issues this Order & Reasons in further support of why this motion is **DENIED**.

### I. BACKGROUND

This case involves a project to construct the new Alexander Milne Home for Women in Waldheim, Louisiana (the "Project"). Plaintiff Voelkel McWilliams, LLC ("VMC"), a general contractor, claims that prior to January 7, 2013, it sought proposals from various subcontractors for use in compiling and submitting a bid on the Project. VMC alleges that Defendant 84 Lumber faxed a proposal to VMC on or about January 7, 2013. According to VMC, this proposal involved the supplying and installing of all wood frames, trusses, accessories, as well as the supplying and installing of siding, doors, and trim. VMC claims that it relied on 84 Lumber's proposal and incorporated that proposal into the bid that it ultimately submitted for the Project. VMC claims that on February 6, 2013, VMC accepted 84 Lumber's proposal. According to VMC, on February 7, 2013, 84 Lumber attempted to retract the proposal. VMC claims that after 84 Lumber refused to perform the work covered by the proposal, VMC had to hire alternate

subcontractors to perform the work.

VMC brought the present lawsuit against 84 Lumber for breach of contract and detrimental reliance. VMC also named Defendant Hardy Holdings, Inc. ("Hardy"), the alleged general partner of 84 Lumber, and Defendant Pierce Hardy Real Estate, Inc., the alleged successor in interest to 84 Lumber. VMC asks to be compensated for all damages that resulted from 84 Lumber's breach of contract and VMC's detrimental reliance.

84 Lumber filed a response in which it denies all allegations and asserts various affirmative defenses. 84 Lumber claims that there was no meeting of the minds and no enforceable contract between them and VMC. As there was no enforceable contract, Defendants assert that the Plaintiff's claim of detrimental reliance also fails.

## II. PRESENT MOTION (Rec. Doc. 52)

As background to the present motion, on February 19, 2015, the Court granted VMC's *ex parte* motion to file an amended complaint. (Rec. Doc. 34). Since the Project had been completed, VMC sought to amend its complaint to include the actual increased cost that VMC paid for its alternative subcontractor. In its motion, VMC stated that VMC counsel had contacted 84 Lumber counsel who consented to the motion. (Rec. Doc. 32 at 2). Moreover, the motion stated that "[b]oth VMC and Defendants agree that Plaintiff's filing of a First Amended and Supplemental Complaint will not delay the trial of this matter." (Rec. Doc. 32 at 2).

Before VMC sought leave to file an amended complaint, 84 Lumber filed an *ex parte* motion for leave to amend their witness list and add Jerry Householder, a consulting engineer, as an expert witness. (Rec. Doc. 30). 84 Lumber explained that it was necessary to add Mr. Householder to address damages calculations, including the Eichleay Formula, which VMC used to calculate its damages as stated in its Supplemental Initial Disclosure. VMC filed this

disclosure on January 22, 2015, after the January 16, 2015 deadline for the expert witness list pursuant to the Scheduling Order.  (Rec. Doc. 30 at 1).  84 Lumber indicated in its motion that VMC did not oppose the motion and would be given an opportunity to depose Mr. Householder from March 3, 2015 until March 13, 2015.  (Rec. Doc. 30 at 2).  The Court reached out to the parties to schedule a telephone status conference to discuss the motion, as 84 Lumber was seeking to add an expert on the eve of trial and VMC would not have time to either find a competing expert or to file a motion *in limine* to exclude Mr. Householder's testimony.  In response to the Court's overtures, VMC's counsel contacted the Court and affirmed that it did not oppose the motion and that inclusion of Mr. Householder would *not* affect the trial date.  With this confirmation, the Court granted 84 Lumber's motion, emphasizing that it only granted this motion after confirming with the parties that adding Mr. Householder as an expert would not affect the trial date.

On March 8, 2015, 84 Lumber filed a motion to strike the amended complaint, or in the alternative, to strike those portions that seek to add new or additional claims of damages based on the Eichleay Formula, or in the alternative, to continue trial.  (Rec. Doc. 52).  84 Lumber contends that starting with the initial complaint filed on December 27, 2014 and continuing until January 22, 2015, VMC only alleged damages in the form of the price difference between the new subcontractor and 84 Lumber's bid.  84 Lumber states that it was not until January 22, 2015, when Plaintiff produced Supplemental Rule 26 disclosures, that Plaintiff introduced a new damages calculation that included delay damages and overhead costs.  (Rec. Doc. 52-1 at 4). Specifically, Plaintiff calculated damages pursuant to the Eichleay Formula that totaled $461,608.88.  (Rec. Doc. 52-1 at 3).

84 Lumber argues that VMC failed to show good cause to amend the Scheduling Order to allow VMC to file an amended complaint after the deadline had passed. (Rec. Doc. 52-1 at 6). 84 Lumber explains that it did not object to an amended complaint that specified the costs alleged with (1) hiring a replacement contractor; (2) subcontractor and material supplier charge in excess of 84 Lumber's proposal; and (3) the inconvenience of having to find and hire a new subcontractor. (Rec. Doc. 52-1 at 7). 84 Lumber does, however, object to the addition of Eichleay damages.

VMC opposes the motion and argues that VMC is not required to specifically plead damages under the Federal Rules of Civil Procedure. (Rec. Doc. 60). VMC argues that pursuant to Fed. R. Civ. Proc. 9(g), a party only needs to plead special damages. Here, VMC argues, the damages "are certainly the ordinary result of a bidder improperly withdrawing its bid and refusing to perform." (Rec. Doc. 60 at 5). VMC avers that the "original complaint put [84 Lumber] on notice that VMC was going to seek any and all damages ordinarily related to a construction contract detrimental reliance claim, including, increased costs for the proposed scope of work, increased overhead, and delay damages." (Rec. Doc. 60 at 6). VMC goes on to note that 84 Lumber has had specific notice of damages since VMC's January 22, 2015 supplemental initial disclosures, and 84 Lumber had the opportunity to address such damages in the deposition of VMC representative, Norman Voelkel. (Rec. Doc. 60 at 6). VMC also emphasizes that it consented to 84 Lumber retaining an expert witness, beyond the deadline, to address the calculation of damages. (Rec. Doc. 60 at 9). VMC notes that 84 Lumber had six weeks to review the project documents and prepare the expert report. Finally, VMC argues that the Court should not grant the motion because 84 Lumber consented to VMC's filing of the amended complaint.

### III. LAW AND ANALYSIS

84 Lumber argues that the Court should strike the amended complaint because VMC failed to show good cause to alter the Court's scheduling order, as the deadline to file amended pleadings terminated on August 18, 2014. "Rule 16(b) governs amendment of pleadings after a scheduling order has expired." *S&W Enterprises, L.L.C v. South Trust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.* "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing an extension.'" *Id.* (quoting Charles Alan Wright, et al., 6 Fed. Prac. And Proc. § 1522 (2d ed. 1990)). The Fifth Circuit has outlined four factors that are relevant to the determination of good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such a prejudice." *Id.* The Supreme Court has noted that "[t]he [Federal] Rules [of Civil Procedure] themselves provide that they are to be construed to 'secure the just, speedy, and inexpensive determination of each action.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 1).

Here, VMC argues that it was unable to specify damages in the original complaint because it only recently completed the Project. More importantly, 84 Lumber *consented* to the filing of the amended complaint. 84 Lumber now argues that it did not agree to the inclusion of damages in the form of Eichleay damages in the amended complaint, but that factor does nothing to alter the fact that 84 Lumber consented to the filing. It is now apparent that 84 Lumber failed

5

to read the complaint or failed to understand what Eichleay damages were, but the fault lies solely with 84 Lumber's counsel.

VMC also afforded 84 Lumber time to secure an expert to address the alleged damages, and 84 Lumber secured an expert, Mr. Householder, who has produced a report and was deposed by VMC's counsel on this very issue. 84 Lumber now argues that it did not have the necessary records for Mr. Householder to perform a full analysis of VMC's Eichleay argument, but this argument rings hollow. During oral argument, VMC's counsel averred that 84 Lumber's counsel had access to their entire file, and that VMC's counsel remains willing to allow Mr. Householder the opportunity to look at any record. The argument that 84 Lumber will suffer prejudice if the Court does not strike the amended complaint is therefore difficult for this Court to fathom.

Moreover, the Federal Rules of Civil Procedure only require a Plaintiff to plead "special damages" with specificity. Fed. R. Civ. Proc. 9(g). *See* § 1310 Pleading Special Damages—In General, 5A Fed. Prac. & Proc. Civ. § 1310 (3d ed.) ("By requiring that special damages be specifically stated, Federal Rule 9(g) maintains the traditional pleading distinction between general damages, which can be alleged without particularity under Rule 8(a), and special damages, which require the pleading of considerable detail."). General damages typically are those elements of an injury that are the proximate and foreseeable consequences of the of the defendant's conduct. Special damages, on the other hand are not foreseeable, but rather stem from the particular circumstances of the case. *See Castellano v. Fragozo*, 311 F.3d 689 (5th Cir. 2002). Here, delay to construction and the associated costs would not constitute special damages, as delayed construction is a foreseeable consequence of a subcontractor's refusal to perform promised work.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that 84 Lumber's motion to dismiss, or alternatively to strike the amended complaint, or alternatively to continue trial, is hereby **DENIED**.

New Orleans, Louisiana, this 13th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE