UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VOELKEL MCWILLIAMS CONSTRUCTION, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 13-6789** |
| | * | |
| **84 LUMBER COMPANY, ET AL.** | * | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 27) and Defendants' Motion for Summary Judgment. (Rec. Doc. 28). The Court has reviewed the briefs and applicable law and now issues this order and reasons.

### I.     UNCONTESTED FACTS

This case involves a project to construct the new Alexander Milne Home for Women in Waldheim, Louisiana (the "Project"). In mid-November of 2012, the Sulzer Group sent out invitations to general contractors to bid on construction of the Project. (Rec. Doc. 28-3 at 1). On November 28, 2013, Plaintiff Voelkel McWilliams Construction, LLC ("VMC") attended a pre-bid meeting for potential general contractors held by the Sulzer Group. (Rec. Doc. 28-3 at 1). Following that meeting, VMC sent out invitations to various subcontractors to bid on portions of the Project. (Rec. Doc. 28-3 at 1; Rec. Doc. 29-2 at 8). Subcontractors who received VMC's invitations could access the Project's plans and specifications by using either the provided hyperlink or by going to the VMC office and looking at the physical documents. (Rec. Doc. 29-2 at 8).

On December 12, 2012, 84 Lumber received an invitation to bid on the Project from Landis Construction, another general contractor. Landis Construction's invitation included a link and password to its file transfer protocol ("FTP") site, which contained the plans and

1

specifications for the Project. (Rec. Doc. 28-3 at 2). 84 Lumber prepared its bid based on Landis Constructions' plans and specification. (Rec. Doc. 28-3 at 3). Unbeknownst to anyone at the time, Landis Construction's FTP site included only addenda nos. 1-3 for the Project's specifications, but there were six total addenda at the times the bids were submitted. (Rec. Doc. 28-3 at 2). VMC therefore prepared its bid and excluded addenda nos. 4-6.

VMC subscribes to Bid Clerk, a service that circulates jobs that are being bid on by general contractors. (*See* Rec. Doc. 27-1 at 2). On December 20, 2012, David Voelkel, an employee of VMC, received an unsolicited email from Bid Clerk notifying VMC that Defendant 84 Lumber Company ("84 Lumber") had shown interest in bidding on the Project. (Rec. Doc. 27-3 at 2). Voelkel received identical, unsolicited emails from Bid Clerk on December 24, 27, and 31, 2012. (Rec. Doc. 27-3 at 2). At the instruction of Voelkel, Sandy Lotspeich, another VMC employee, called vendors who had shown interest via Bid Clerk to see if they were bidding on the Project. (Rec. Doc. 27-14 at 2).

On the morning of January 7, 2013, prompted by Bid Clerk, Lotspeich called 84 Lumber Company and spoke with Leslie Lamonte, the Commercial Installed Sales Coordinator for 84 Lumber. Lamonte confirmed that 84 Lumber was bidding on the project, and Lotspeich asked Lamonte to send VMC a proposal. At 11:31 a.m., Lotspeich received an email from Lamonte that said "Sandy, Please see the attached proposal for Alexander Milne Home for Women" and included the proposal as an attachment. (Rec. Doc. 27-8). 84 Lumber submitted its bid that it had prepared for Landis Construction, even forgetting to change the general contractor information from Landis Construction to VMC on the bid's cover page. (Rec. Doc. 28-4 at 31). The proposal included the following Term and Condition:

> 84 Lumber performed an accurate take-off from drawings and specifications provided using standard procedures. Customer must have their estimator contact 84 Lumber to verify the quantities required, material waste allowance, adherence of products to specification, or to clarify any part of the estimate. 84 Lumber does not guarantee quantities will be sufficient to complete the job unless this is an installed 84 Lumber project.

(Rec. Doc. 27-8 at 2).

At 2:00 p.m. on that same day, VMC submitted its bid for the project. (Rec. Doc. 27-3 at 4). VMC used 84 Lumber's proposal to compile VMC's final bid. (Rec. Doc. 27-3 at 4; Rec. Doc. 27-5). Shortly after VMC submitted its bid, the owner of the Project invited VMC to a post bid interview. (Rec. Doc. 27-2 at 5).

On January 9, 2013 and January 10, 2013, Voelkel and Sean Horton, 84 Lumber's Outside Commercial Installed Sales Manager, engaged in discussions via telephone about the Project and 84 Lumber's proposal. Voelkel and Horton discussed whether 84 Lumber could perform the amount of work outlined in the proposal; whether 84 Lumber could adhere to the schedule; how the materials would be delivered and stored at the site; and 84 Lumber's experience with other developments similar to the Project. (Rec. Doc. 27-3 at 5; Rec. Doc. 27-15 at 8-10; Rec. Doc. 27-12). On or about January 11, 2013, VMC attended the post bid interview with the owner. (Rec. Doc. 27-3 at 6). The following day, the owner notified VMC that it was the successful bidder and that the owner intended to enter into a formal contract with VMC for its bid price. (Rec. Doc. 27-3 at 6; Rec. Doc. 27-13).

On January 16, 2013, VMC notified 84 Lumber via email that the owner had accepted VMC's bid. (Rec. Doc. 27-3 at 6). Specifically, Voelkel emailed Horton and noted that VMC was "currently evaluating all pricing and proposals/scopes in preparation for project buyout and subcontracts." (Rec. Doc. 28-4 at 35). Voelkel then outlined ten questions regarding the scope

3

of 84 Lumber's proposed work; a potential roofing price increase; and similar projects undertaken by 84 Lumber. (Rec. Doc. 28-4 at 35). In response to these questions, 84 Lumber submitted a revised proposal on January 24, 2013. (Rec. Doc. 28-4). Voelkel received the revised proposal and emailed Lamonte and Horton and stated that "[t]he revised proposal deleted scopes of work which were included on your bid proposal. As a clarification, it is our intention to accept your bid day proposal in its entirety including interior/exterior doors, frames, and hardware and interior trim." (Rec. Doc. 28-4 at 82).

On January 31, 2013, at a meeting attended by Horton, Voelkel, and VMC's owner, Norman Voelkel, Horton learned for the first time that there were six addenda to the project plans and specifications. (Rec. Doc. 28-3 at 3). On February 6, 2013, VMC sent 84 Lumber a letter and accepted 84 Lumber's bid-day proposal. (Rec. Doc. 28-4 at 71). The following day, on February 7, 2013, 84 Lumber sent VMC an official bid retraction. (Rec. Doc. 28-4 at 76; Rec. Doc. 28-3 at 3).

## II.  PRESENT MOTIONS

### A. VMC's Motion for Partial Summary Judgment (Rec. Doc. 27)

VMC moves for partial summary judgment on its claim of detrimental reliance and argues that the three elements of detrimental reliance are met pursuant to La. Civ. Code art. 1967. VMC contends that "to establish detrimental reliance, a party must prove three elements: a representation by conduct or word; justifiable reliance on the representation; and a change in one's position to one's detriment as a result of the reliance." (Rec. Doc. 27-1 at 7) (citing *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005)). Looking to the first element, VMC argues that 84 Lumber made a "representation by conduct or word" because 84 Lumber emailed VMC a proposal, thus representing to VMC that 84 Lumber "would perform a

certain scope of work for a certain price."  (Rec. Doc. 27-1 at 9).   VMC avers that 84 Lumber knew that VMC would rely on the proposal, as 84 Lumber had relied on subcontractors and suppliers to generate their proposal.  (Rec. Doc. 27-1 at 9).  VMC then argues that it "reasonably relied on the 84 [p]roposal, incorporating it into VMC's irrevocable bid to the owner."  (Rec. Doc. 27-1 at 9).  VMC argues that after 84 Lumber refused to perform the work included in its proposal, VMC was forced to hire alternative contractors and suppliers at a higher price.  (Rec. Doc. 27-1 at 10).  VMC likens the instant case to *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Protec. Sys. Co.*, a case where the court awarded damages under a theory of detrimental reliance when a subcontractor's bid failed to include all of the addenda and the subcontractor notified the general contractor of this error after the owner had accepted the general contractor's bid. (Rec. Doc. 27-1 at 10).

    84 Lumber opposes the motion and argues that VMC's reliance was unreasonable and therefore does not satisfy the second element of detrimental reliance.  (Rec. Doc. 31 at 3).  84 Lumber avers that it was patently unreasonably for VMC, an experienced contractor, to rely on a subcontractor's bid for a multi-million dollar project when VMC had never worked with 84 Lumber and VMC had received the bid a mere three hours before the submission deadline.  (Rec. Doc. 31 at 3).  84 Lumber argues that this unreasonableness "is further compounded by the fact that the proposal contained a provision requiring VMC to contact 84 Lumber to review the specifications, which was never done."  (Rec. Doc. 31 at 3).  The continued negotiations after bid day between 84 Lumber and VMC, 84 Lumber asserts, further undermines any finding that VMC's reliance was reasonable.  Specifically, 84 Lumber contends that the clarifications VMC sought after bid day signify "red flags" and any reliance on the proposal was therefore unreasonable.

84 Lumber further argues that any reliance was unreasonable because Louisiana Law limits detrimental reliance "to those instances in which a promise relied upon is in the form contemplated by the parties." (Rec. Doc. 31 at 8). Here, 84 Lumber argues, reliance is unreasonable because VMC clearly contemplated a separate subcontract to formalize any agreement. (Rec. Doc. 31 at 9). Because no contract was ever executed, 84 Lumber contends that any reliance on the part of VMC is unreasonable. (Rec. Doc. 31 at 10). 84 Lumber distinguishes the instant case from *Matherne*, noting that "[i]n holding that Matherne proved its claim of detrimental reliance, the Court expressly found the 'reasonableness was supported by its attempt to verify the bid before incorporating it.'" (Rec. Doc. 31 at 10) (quoting *Percy J. Matherne Contractor Inc. v. Grinnell Fire Protection Systems Co.*, 915 F. Supp. 818 (M.D. La. 1995)). Conversely, 84 Lumber asserts that VMC failed to contact 84 Lumber before incorporating its proposal into the overall bid when VMC knew that it had not provided the project documents to 84 Lumber. (Rec. Doc. 31 at 11).

VMC filed a reply and notes that 84 Lumber only opposes VMC's motion on the grounds that VMC's reliance was unreasonable. (Rec. Doc. 39 at 3). VMC argues that it is industry custom to rely on vendor quotes, and highlights that Lamonte testified that 84 Lumber relied on vendor quotes and expected a general contractor to rely on 84 Lumber's bid when the general contractor submitted its overall bid. (Rec. Doc. 39 at 5). In response to 84 Lumber's argument that the parties' post-bid negotiations render any reliance unreasonable, VMC argues that the relevant time period for the detrimental reliance claim terminated when VMC submitted its bid to the owner. (Rec. Doc. 39 at 6). Focusing on the relevant terms of 84 Lumber's proposal, VMC argues that the sentences read together did not require VMC to verify plans or specifications because the project qualified as an 84 Lumber installed project. (Rec. Doc. 39 at

6-7). VMC argues that the bid was in the form contemplated by the parties, as the parties contemplated a proposal. (Rec. Doc. 39 at 8). VMC avers that "it was entirely reasonable for VMC to rely upon a large and sophisticated national company having the complete plans and specifications to prepare the 84 Lumber proposal." (Rec. Doc. 39 at 8). Finally, VMC notes that "it is an uncontested material fact that 84 Lumber told VMC that everything was fine and that they were ready, willing, and able to perform their promise before the owner accepted VMC's bid." (Rec. Doc. 39 at 9).

## B. 84 Lumber's Motion for Summary Judgment (Rec. Doc. 58)

84 Lumber moves for summary judgment on VMC's breach of contract and detrimental reliance claims. 84 Lumber argues that there was never a valid contract between the parties because there was no offer and acceptance, but rather, the continued clarifications sought by VMC after 84 Lumber's bid constituted counter-offers to which no party agreed. (Rec. Doc. 28-1 at 8-9). Even if there was a valid contract, 84 Lumber contends that it "was in error as to its principal cause of the contract – the type and scope of the work – rendering the contract voidable" under Louisiana Law. (Rec. Doc. 28-1 at 12).

84 Lumber argues that its bid was revocable under Louisiana Law, and that 84 Lumber revoked its bid when 84 Lumber made its intention known to VMC to revoke its initial bid on January 16, 2013. (Rec. Doc. 28-1 at 16). Even if this action did not constitute revocation, 84 Lumber argues, the submission of 84 Lumber's revised proposal on January 24, 2015 constituted a revocation. (Rec. Doc. 28-1 at 16). This revocation was therefore conveyed to VMC before VMC accepted the bid on February 6, 2013. (Rec. Doc. 28-1 at 16). In its argument for summary judgment on VMC's detrimental reliance claim, 84 Lumber puts forth the same arguments already recited in its opposition to VMC's motion for summary judgment.

VMC opposes 84 Lumber's motion and argues that there was a valid contract between the parties. VMC contends that it accepted 84 Lumber's bid day proposal on February 6, 2013, the day before 84 Lumber attempted to retract its proposal. (Rec. Doc. 29 at 9). VMC further argues that 84 Lumber's attempt to retract the bid day proposal on February 7, 2013 undermines any argument that 84 Lumber had effectively retracted the bid day proposal with the January 24, 2013 proposal. (Rec. Doc. 29 at 10-11). In response to 84 Lumber's averment that the parties' post-bid conduct demonstrates that no contract existed, VMC argues that (1) Voelkel testified that he did not ask for a new proposal with his January 16, 2013 email but rather sought clarifications; and (2) 84 Lumber's February 7, 2013 retraction letter demonstrates that 84 Lumber thought their bid day proposal had not been previously revoked. (Rec. Doc. 29 at 12-13).

84 Lumber replies and argues that Louisiana Law does not require a formal revocation and its actions "clearly showed that it intended to retract is bid and submit another that met the specifications provided by VMC." (Rec. Doc. 47 at 2). Focusing on VMC's detrimental reliance claim, 84 Lumber contends that "VMC possess the means of obtaining the correct information, thus its reliance on inaccurate statements about a contract is not reasonable as a matter of law." (Rec. Doc. 47 at 3). Focusing on the terms of the agreement, 84 Lumber reiterates that VMC's reliance is unreasonable as a matter of law because it did not comply with the express terms of the contract when it failed to contact 84 Lumber and confirm the required specifications. (Rec. Doc. 47 at 4). 84 Lumber also insists that it never argued that the retraction only applied to the January 24, 2013 proposal but contends that the letter served to formally retract all proposals. (Rec. Doc. 47 at 5).

VMC filed a sur-reply and argues that 84 Lumber's bid day proposal was irrevocable for thirty days, so any attempted revocation within that thirty-day window bears no effect on VMC's acceptance on February 6, 2013.  (Rec. Doc. 42-1 at 1-2).  VMC avers that 84 Lumber failed to provide any evidence that VMC was aware of any "red flags" on bid day, the day VMC relied on 84 Lumber's quote.  (Rec. Doc. 42-1 at 2).  Moreover, VMC contends that 84 Lumber was unaware that anything was wrong with its proposal and expected the general contractors to rely on it.  (Rec. Doc. 42-1 at 3).

### III.     LAW & ANALYSIS

#### A.     Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial."  *Id.* When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law."  *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

B. **Detrimental Reliance**

A cause of action for detrimental reliance originates with the Louisiana Civil Code:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

La. Civ. Code art. 1967. "Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance." *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *see Suire v Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59. "Significantly, to prevail on a detrimental reliance claim, Louisiana Law does not require proof of a formal, valid, and enforceable contract." *Suire*, 907 So. 2d at 59. Indeed, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d at 403. "Rather, the existence of a promise and a reasonable reliance on that promise to one's detriment are the only requirements." *Percy J. Matherne Contractor, Inc.*, 915 F. Supp. at 824.

As VMC highlights in its reply brief, the crux of the Court's analysis is whether VMC's reliance on 84 Lumber's bid was reasonable, the second element of a detrimental reliance claim. Whether a party reasonably relied on a representation is usually a question of fact. *See id.* "Under Louisiana law, reasonableness is determined by examining factual circumstances, one of which is the commercial sophistication of the party asserting the claim." *In re Ark-La-Tex Timber Co.*, Inc., 482 F.3d 319, 334 (5th Cir. 2007).

A general contractor's reliance on a subcontractor's bid when the general contractor submits its bid for a project signifies the quintessential detrimental reliance case. As noted by one Louisiana Court, "those cases present[] classic facts suggesting the need for protecting the general contractor from a careless and sometimes reckless subcontractor who felt no responsibility for a bid that his general contractor had incorporated into an overall bid." *JCD Marketing Co. v. Bass Hotels and Resorts, Inc.*, 812, So.2d 834, 840. VMC relies on one such case, *Percy J. Matherne Contractor, Inc. v. Grinnell Fire Prot. Sys. Co.*, to argue that the facts of this case are ripe for summary judgment. This comparison to *Matherne* is not precise, as there is a significant distinction between the facts of this case and *Matherne* that highlights a disputed material fact.

In *Matherne*, like this case, the subcontractor submitted a bid and failed to include two of the addenda, thus resulting in a significantly lower bid than the other subcontractors. *Percy J. Matherne Contractor, Inc.* 915 F. Supp. at 819-20. The general contractor incorporated this bid into his overall bid that was ultimately accepted for the project. *Id.* After the general contractor submitted his bid for the project, but before the general contractor executed a formal contract with the subcontractor, the subcontractor learned of his error and called the general contractor to revoke his bid. *Id.* at 820. The general contractor's bid was ultimately selected for the project, and the general contractor sued to recover for the additional expenses incurred that resulted from the subcontractor's refusal to do the work for the initial bid-price.

The Court held that the general contractor could recover from the subcontractor based on a theory of detrimental reliance. In its determination, the Court emphasized how the subcontractor knew that the general contractor would rely on and use its bid. *Id.* at 824. Crucially, the Court found that the general contractor's reliance was reasonable, and "its

11

reasonableness [was] supported by its attempt to verify the bid before incorporating it." *Id.* at 825. The Court recounted how the general contractor had made two phone calls prior to relying on the bid for the purpose of verifying whether the bid was correct, and the Court noted how the phone records corroborated this fact. *Id.* Moreover, the general contractor testified how the subcontractor's employee told the general contractor that the bid was correct and could be relied upon. The Court held that the evidence was reliable and credible, and even if the subcontractor did not expressly induce reliance, the subcontractor should have known that the bid would induce reliance.

Here, unlike *Matherne*, VMC did not call 84 Lumber to verify whether the plans and specifications were correct. VMC incorporated 84 Lumber's bid into its own proposal a mere three hours after receipt of the bid and waited until *after* submitting its bid to the owner to reach out to VMC. This distinction is significant, as it bears on whether VMC's reliance was reasonable. The Court thus finds that there is a disputed material fact as to whether VMC's reliance was reasonable when it incorporated 84 Lumber's bid without verifying it prior to submission.

Based on these same facts, 84 Lumber contends in its own motion that there is no dispute that VMC's reliance was unreasonable because it is inherently unreasonable for an experienced general contractor to rely on a bid received hours before it submits its own bid without confirming that the plans and specifications are correct. According to 84 Lumber, the unreasonableness of VMC's reliance is compounded by the fact that it was bidding on a project worth approximately $9.8 million and had never worked with 84 Lumber. While the Court realizes these facts may support an ultimate determination that VMC's reliance was unreasonable, the Court also recognizes that 84 Lumber is an experienced subcontractor who

knows that general contractors will rely on 84 Lumber's bids in compiling their overall bids. Indeed, Lamonte testified that 84 Lumber expects a general contractor to rely on 84 Lumber's bid when a general contractor submit its overall bid to the owner. (Rec. Doc. 27-16 at 15). Lamonte also testified that it was common in the industry for subcontractors' to wait to submit their bids until the "last minute" to prevent general contractors from shopping their bids to other subcontractors. (Rec. Doc. 27-16 at 14).

      This evidence compels the Court to find that there is a disputed material fact as to whether VMC's reliance was reasonable. 84 Lumber points to the language of the contract and avers that VMC's failure to contact 84 Lumber to confirm the bid renders VMC's reliance patently unreasonable and negates the contract. But the language of the contract does not compel such a result: the first sentence of the relevant contract term reads, "84 Lumber performed an accurate take-off from drawings and specifications provided using standard procedures." (Rec. Doc. 27-8 at 2). Based on this language, and the accompanying text that states that the customer should contact 84 Lumber to verify the amounts, the Court finds that a juror could determine that VMC's reliance was reasonable based on industry practice and the expectation that a subcontractor submits its bid with the intention to be bound. Conversely, the facts could support a finding that VMC's failure to adhere to the contract terms renders the reliance patently unreasonable. *See generally LaBarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 464 (5th Cir. 2008) (holding that a well-established company's reliance on oral representations was unreasonable when those terms directly contradicted the terms of the letter of credit). Since there is a genuine dispute of material fact as to whether VMC's reliance was reasonable, summary judgment is not appropriate on either party's motion.

### C. Breach of Contract

To prevail on a claim for breach of contract, a plaintiff must prove, among other things, the existence of a contract. *Terrebonne Parish School Board v. Mobil Oil Corporation*, 310 F.3d 870, 888 (5th Cir.2002). The determination of the existence of a contract is a finding of fact pursuant to Louisiana Law. *SnoWizard, Inc. v. Robinson*, 897 F. Supp. 2d 472, 480 (E.D. La. 2012). "A contract is formed by the consent of the parties established through offer and acceptance." La. Civ. Code. art. 1927. "Four elements are required for a valid contract: (1) the parties must possess the capacity to contract; (2) the parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose." *Wallace v. Shreve Memorial Library,* 79 F.3d 427, 430 n. 4 (5th Cir.1996) (citing *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La.App. 2nd Cir.1992) and La. Civ. Code arts.1918, 1927, 1966, 1977)). A contract must be treated as a whole and any parts of the contract not agreed upon render the contract unenforceable. *See Sig Haas & Son v. Bernhardt*, 81 So. 402, 403 (La.1919). 84 Lumber argues that the Court should grant summary judgment because no contract existed between the parties based on the following theories: unilateral error, counteroffer, and revocation. The Court will address each argument in turn.

#### 1. Unilateral Error

"Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code art. 1949. "Under this Article, relief for error may be granted only when the error affects the cause of the obligation, that is, when a party's consent has been determined by it." Official Comment, La. Civ. Code art. 1949. *See also Worley v. Chandler,* 44,047 (La. App. 2 Cir. 3/4/09), 7 So. 3d 38, 42; *Jefferson Truck Equip. Co. v. Guarisco Motor Co.*, 250 So. 2d 211,

214 (La. Ct. App. 1971) ("To vitiate a contract, an error of fact must pertain to the principal cause for making the agreement and must pertain to either the motive for making the contract, the person with whom the contract is made, or to the subject matter of the contract itself.").

Here, 84 Lumber contends that there was a unilateral error as to the scope of the contract and that VMC knew or should have known about it.  Courts have found that the scope of work to be performed in a construction bid signifies a cause of the contract.  *See McCarty Corp. v. Pullman-Kellogg, Div. of Pullman, Inc.*, 751 F.2d 750, 759 (5th Cir. 1985);  *Lamar Contractors, Inc. v. Rolling Plains Const., Inc.*, No. CIV.A. 11-1336, 2012 WL 2190814, at *4 (E.D. La. June 14, 2012); *Wallace Indus. Constructors v. Louisiana Elec. Co-op., Inc.*, 348 F. Supp. 675, 681 (M.D. La. 1972); *Universal Iron Works, Inc. v. Falgout Refrigeration, Inc.*, 419 So. 2d 1272, 1276 (La. Ct. App. 1982); *North Development Co., Inc. v. McClure,* 276 So.2d 395, 399 (La. Ct. App. 1973).

While 84 Lumber may satisfy the cause element, the Court finds that it remains a disputed material fact as to whether VMC knew or should have known about this error.  As the official commentary to La. Civ. Code art. 1949 states:

> When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason. *See Hello World Broadcasting Corp. v. International Broadcasting Corp.*, 186 La. 589, 173 So. 115 (1937); *Kirkland v. Edenborn*, 140 La. 669, 73 So. 719 (1916); *Scoggin v. Bagley*, 368 So.2d 763 (La.App. 2nd Cir.1979). Yet, expanding the rule stated in [La.] C[iv]. C[ode] [a]rt. 1826 (1870), they have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract. *See Marcello v. Bussiere*, 284 So.2d 892 (La.1973); *Jefferson Truck Equipment Co. v. Guarisco Motor Co.*, 250 So.2d 211 (La.App. 1st Cir.1971).

Official Comment, La. Civ. Code Ann. art. 1949.

84 Lumber fails to prove that there is no genuine dispute of material fact as to whether VMC knew or should have known that 84 Lumber's bid did not contain addenda 4-6. In its motion, 84 Lumber states that "Mr. Voelkel testified that he knew prior to his purported acceptance that 84 Lumber did not have addendums 4 through 6 at the time 84 Lumber submitted its bid" and cites Voelkel's deposition as support for this fact. (Rec. Doc. 28-1 at 14). After scouring the cited page of the deposition, the Court is unable to affirmatively establish this fact. While Voelkel testified that Horton had relayed to Voelkel during the January 31, 2013 meeting that 84 Lumber was unaware of addenda 4-6, Voelkel also testified that he offered 84 Lumber concessions "to try to make the whole thing work," and that he was under the impression that 84 Lumber "would look over some of their issues and try and get something back to [VMC]." (Rec. Doc. 29-2 at 17). This testimony signifies that VMC was unaware that 84 Lumber's failure to include addenda 4-6 constituted a cause of the contract, but rather, Voelkel thought the parties could salvage the contract despite the error. The Court therefore finds that it remains a disputed material fact as to whether VMC knew or should have known of 84 Lumber's failure to include addenda 4-6, and summary judgment is therefore denied under a theory of unilateral error.

### 2. Counteroffers

84 Lumber contends that there was no contract because VMC's communications to 84 Lumber seeking clarifications constituted counteroffers and there was therefore no offer and acceptance. Under Louisiana Law, a valid contract requires an offer and an acceptance. *See* La. Civ. Code art. 1927. "An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer." La. Civ. Code art. 1943.

84 Lumber argues that the correspondence between VMC and 84 Lumber compels this Court to conclude that these exchanges were a series of counteroffers, but the Court is not persuaded by this assertion. Voelkel testified that it is industry practice for subcontractors to assume additional responsibilities after the initial bid, but such changes do not alter the underlying bid. (Rec. Doc. 29-2 at 9). Moreover, in response to 84 Lumber's alleged counteroffer, Voelkel responded via email to 84 Lumber and stated: "[a]s a clarification, it is our intention to accept your bid day proposal in its entirety including interior/exterior doors, frames, and hardware and interior trim. As discussed, we agree to review and were awaiting a *separate alternate proposal* to furnish and install the wood windows." (Rec. Doc. 28-4 at 92). Based on this evidence, the Court finds that it remains a disputed material fact as to whether the communications signify an offer and acceptance or a series of counteroffers.

### 3.     Revocation

84 Lumber contends that it revoked its bid prior to VMC's acceptance when VMC sought clarifications for the bid proposal on January 16, 2013, and if not on that day, when 84 Lumber submitted its revised bid on January 24, 2013. (Rec. Doc. 28-1 at 16). Under Louisiana Law, "[a]n offer not irrevocable under Civil Code Article 1928 may be revoked before it is accepted." La. Civ. Code art. 1930. Article 1928 provides that "[a]n offer that specifies a period of time for acceptance is irrevocable during that time. When the offeror manifests an intent to give the offeree a delay within which to accept, without specifying a time, the offer is irrevocable for a reasonable time." La. Civ. Code art. 1928. "A revocation of a revocable offer is effective when received by the offeree prior to acceptance." La. Civ. Code art. 1937.

84 Lumber argues that its offer was revocable under Article 1928, but this Court is not convinced. As noted in *W.M. Heroman & Co., Inc. v. Saia Elec., Inc.*:

> [A] custom prevails in the building trade to the effect that a subcontractor's bid to a general contractor, in the absence of a provision to the contrary, may be considered irrevocable after it has been used in preparation of the general contractor's bid to the owner, and has been accepted by the owner prior to the attempted revocation by the subcontractor.

346 So.2d 827, 830 (La. App. Ct. 1997) (quoting *National Co. v. Navarro*, 149 So.2d 648 (La. App. Ct. 1963)).  *See also Strickland v. Marathon Oil Co.*, 446 F. Supp. 638, 641 (E.D. La. 1978) (noting that the *W.M. Heroman & Co.* court found that a subcontractor's bid was irrevocable and "based its finding on all of the evidence in the case, including a reference to a custom in the building trade that such bids were irrevocable.").

Here, there is no clause in 84 Lumber's bid that transforms the bid from the traditional, irrevocable subcontractor bid to a revocable one.  Even if the Court were to find that the bid was revocable, it remains a disputed material fact as to whether 84 Lumber's actions constituted a revocation. 84 Lumber asserts that it manifested its intent to revoke its bid day proposal through its communications on January 16, 2013 and January 24, 2013.  Pursuant to the Second Restatement of Contracts, "[a]n offeree's power of acceptance is terminated when the offeror takes definite action inconsistent with an intention to enter into the proposed contract and the offeree acquires reliable information to that effect."  As already discussed in reference to the alleged counteroffers, there is evidence that VMC merely sought clarifications regarding 84 Lumber's bid and that these post-bid discussions are common in the industry.  This evidence counters 84 Lumber's argument that it "unequivocally conveyed" its revocation of its initial bid through its actions on January 16, 2013 and January 24, 2013.  The Court thus finds that there is, at best, a disputed material fact as to whether 84 Lumber revoked its bid and will therefore deny summary judgment based on this theory.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that VMC's Motion for Partial Summary Judgment (Rec. Doc. 27) and 84 Lumber's Motion for Summary Judgment (Rec. Doc. 28) are both **DENIED**.

New Orleans, Louisiana, this 13th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE