UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **VOELKEL MCWILLIAMS CONSTRUCTION, LLC** * | | **CIVIL ACTION** |
| * | | |
| **VERSUS** * | | **No. 13-6789** |
| * | | |
| **84 LUMBER COMPANY, ET AL.** * | | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for New Trial. (Rec. Doc. 109). Having reviewed the parties' briefs and the applicable law, the Court now issues this Order & Reasons.

**I.     BACKGROUND**

This case involves a project to construct the new Alexander Milne Home for Women in Waldheim, Louisiana (the "Project"). In mid-November of 2012, the Sulzer Group sent out invitations to general contractors to bid on construction of the Project. (Rec. Doc. 28-3 at 1). On November 28, 2013, Plaintiff Voelkel McWilliams Construction, LLC ("VMC") attended a pre-bid meeting for potential general contractors held by the Sulzer Group. (Rec. Doc. 28-3 at 1). Following that meeting, VMC sent out invitations to various subcontractors to bid on portions of the Project. (Rec. Doc. 28-3 at 1; Rec. Doc. 29-2 at 8). Subcontractors who received VMC's invitations could access the Project's plans and specifications by using either the provided hyperlink or by going to the VMC office and looking at the physical documents. (Rec. Doc. 29-2 at 8).

On December 12, 2012, 84 Lumber received an invitation to bid on the Project from Landis Construction, another general contractor. Landis Construction's invitation included a link and password to its file transfer protocol ("FTP") site, which contained the plans and

1

specifications for the Project. (Rec. Doc. 28-3 at 2). 84 Lumber prepared its bid based on Landis Constructions' plans and specification. (Rec. Doc. 28-3 at 3). Unbeknownst to anyone at the time, Landis Construction's FTP site included only addenda nos. 1-3 for the Project's specifications, but there were six total addenda at the times the bids were submitted. (Rec. Doc. 28-3 at 2). VMC therefore prepared its bid and excluded addenda nos. 4-6.

VMC subscribes to Bid Clerk, a service that circulates jobs that are being bid on by general contractors. (*See* Rec. Doc. 27-1 at 2). On December 20, 2012, David Voelkel, an employee of VMC, received an unsolicited email from Bid Clerk notifying VMC that Defendant 84 Lumber Company ("84 Lumber") had shown interest in bidding on the Project. (Rec. Doc. 27-3 at 2). Voelkel received identical, unsolicited emails from Bid Clerk on December 24, 27, and 31, 2012. (Rec. Doc. 27-3 at 2). At the instruction of Voelkel, Sandy Lotspeich, another VMC employee, called vendors who had shown interest via Bid Clerk to see if they were bidding on the Project. (Rec. Doc. 27-14 at 2).

On the morning of January 7, 2013, prompted by Bid Clerk, Lotspeich called 84 Lumber Company and spoke with Leslie Lamonte, the Commercial Installed Sales Coordinator for 84 Lumber. Lamonte confirmed that 84 Lumber was bidding on the project, and Lotspeich asked Lamonte to send VMC a proposal. At 11:31 a.m., Lotspeich received an email from Lamonte that said "Sandy, Please see the attached proposal for Alexander Milne Home for Women" and included the proposal as an attachment. (Rec. Doc. 27-8). 84 Lumber submitted its bid that it had prepared for Landis Construction, even forgetting to change the general contractor information from Landis Construction to VMC on the bid's cover page. (Rec. Doc. 28-4 at 31). The proposal included the following Term and Condition:

> 84 Lumber performed an accurate take-off from drawings and specifications provided using standard procedures. Customer must have their estimator contact 84 Lumber to verify the quantities required, material waste allowance, adherence of products to specification, or to clarify any part of the estimate. 84 Lumber does not guarantee quantities will be sufficient to complete the job unless this is an installed 84 Lumber project.

(Rec. Doc. 27-8 at 2).

At 2:00 p.m. on that same day, VMC submitted its bid for the project. (Rec. Doc. 27-3 at 4). VMC used 84 Lumber's proposal to compile VMC's final bid. (Rec. Doc. 27-3 at 4; Rec. Doc. 27-5). Shortly after VMC submitted its bid, the owner of the Project invited VMC to a post bid interview. (Rec. Doc. 27-2 at 5).

On January 9, 2013 and January 10, 2013, Voelkel and Sean Horton, 84 Lumber's Outside Commercial Installed Sales Manager, engaged in discussions via telephone about the Project and 84 Lumber's proposal. Voelkel and Horton discussed whether 84 Lumber could perform the amount of work outlined in the proposal; whether 84 Lumber could adhere to the schedule; how the materials would be delivered and stored at the site; and 84 Lumber's experience with other developments similar to the Project. (Rec. Doc. 27-3 at 5; Rec. Doc. 27-15 at 8-10; Rec. Doc. 27-12). On or about January 11, 2013, VMC attended the post bid interview with the owner. (Rec. Doc. 27-3 at 6). The following day, the owner notified VMC that it was the successful bidder and that the owner intended to enter into a formal contract with VMC for its bid price. (Rec. Doc. 27-3 at 6; Rec. Doc. 27-13).

On January 16, 2013, VMC notified 84 Lumber via email that the owner had accepted VMC's bid. (Rec. Doc. 27-3 at 6). Specifically, Voelkel emailed Horton and noted that VMC was "currently evaluating all pricing and proposals/scopes in preparation for project buyout and subcontracts." (Rec. Doc. 28-4 at 35). Voelkel then outlined ten questions regarding the scope

of 84 Lumber's proposed work; a potential roofing price increase; and similar projects undertaken by 84 Lumber. (Rec. Doc. 28-4 at 35). In response to these questions, 84 Lumber submitted a revised proposal on January 24, 2013. (Rec. Doc. 28-4). Voelkel received the revised proposal and emailed Lamonte and Horton and stated that "[t]he revised proposal deleted scopes of work which were included on your bid proposal. As a clarification, it is our intention to accept your bid day proposal in its entirety including interior/exterior doors, frames, and hardware and interior trim." (Rec. Doc. 28-4 at 82).

On January 31, 2013, at a meeting attended by Horton, Voelkel, and VMC's owner, Norman Voelkel, Horton learned for the first time that there were six addenda to the project plans and specifications. (Rec. Doc. 28-3 at 3). On February 6, 2013, VMC sent 84 Lumber a letter and accepted 84 Lumber's bid-day proposal. (Rec. Doc. 28-4 at 71). The following day, on February 7, 2013, 84 Lumber sent VMC an official bid retraction. (Rec. Doc. 28-4 at 76; Rec. Doc. 28-3 at 3).

This matter was tried to a seven-person jury on March 30 and 31 and April 1, 2015. (Rec. Doc. 101). At the conclusion of all of the evidence, 84 Lumber moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, asking the Court to direct a verdict finding that VMC's reliance was unreasonable. (Rec. Doc. 99). The Court denied this motion.

Thereafter, the Court instructed the jury on the law and submitted jury interrogatories to the jury for its use. After deliberations, the jury returned a verdict in favor of VMC and awarded VMC $200,000 in damages. (Rec. Doc. 101-1 at 2). In response to the third interrogatory, "Do you find from a preponderance of the evidence that Voelkel McWilliams Construction, LLC's reliance on 84 Lumber Company's bid was reasonable?," the jury answered "Yes." (Rec. Doc. 101-1 at 1). A Judgment was entered on the jury verdict on April 2, 2015.

## II.     PRESENT MOTIONS

### A. 84 Lumber's Motion (Rec. Doc. 109)

84 Lumber filed the present Motion seeking relief under Federal Rules of Civil Procedure 50 and 59.  With regard to 84 Lumber's request for Rule 50 relief, 84 Lumber argues that the evidence introduced at trial clearly shows that the parties contemplated that a formal, written subcontract would be executed and that VMC's purported reliance on the bid was therefore unreasonable under Louisiana Law.  (Rec. Doc. 109-1 at 9-10).  84 Lumber avers that Louisiana case law instructs that "a promise not in the form contemplated by the parties is presumptively unreasonable."  (Rec. Doc. 109-1 at 7) (quoting *JCD Marketing Co. v. Bass Hotels and Resorts, Inc.*, 812 So.2d 834, 840 (La. App. 4 Cir. 2002)).  In addition to *JCD Marketing Co.*, 84 Lumber cites to *Carter v. Huber & Heard, Inc.*, 657 So.2d 409 (La. App. 3 Cir. 1995), and *Rogers v. Brooks*, 122 Fed. App'x 729, (5th Cir. 2004), as support for this proposition.  84 Lumber also argues that the evidence at trial demonstrated that 84 Lumber engaged in bid shopping, and bid shopping precludes a contractor from recovering under a theory of detrimental reliance.  (Rec. Doc. 109-1 at 11) (citing *Sipco Serv. Marine v. Wyatt Field Serv.*, 857 S.W. 2d 602, 605-606 (Tex. App. 1st Cir. 1993)).  Specifically, 84 Lumber points to the emails introduced at trial between VMC and 84 Lumber in January 2013, after VMC submitted its general contractor bid, which discussed the scope of 84 Lumber's proposed work and the bid price.  84 Lumber thus argues that there was not sufficient evidentiary support for the jury's verdict in favor of VMC, or in the alternative, that the verdict is against the weight of the of evidence and the Court should thus order a new trial.  (Rec. Doc. 109-1 at 13).

### B. VMC's Opposition (Rec. Doc. 111)

VMC opposes 84 Lumber's Motion. VMC argues that 84 Lumber fails to cite a case involving a general contractor's reliance on a subcontractor's bid, and courts have held that these facts signify quintessential fact patterns of detrimental reliance. (Rec. Doc. 111 at 2). VMC maintains that the evidence at trial unquestionably demonstrated that the facts of this case satisfied the elements of detrimental reliance. (Rec. Doc. 111 at 3). VMC highlights the testimony of Daniel Voelkel, who testified that he relied upon 84 Lumber's bid when he submitted his general contractor bid. (Rec. Doc. 111 at 3). VMC also emphasizes the testimony of Leslie Lamonte, an 84 Lumber employee who testified that she relied on subcontractor and vendor pricing when she prepared 84 Lumber's bid. (Rec. Doc. 111 at 4). VMC stresses that it is industry practice for general contractors to rely on subcontractors' bids when compiling the general contractor bids, so it is of no consequence whether the parties intended to enter into a formal subcontract in the future. (Rec. Doc. 111 at 5). VMC disputes 84 Lumber's assertion that it engaged in bid shopping, arguing that the evidence demonstrated that VMC wanted 84 Lumber to do the work because it was the only subcontractor that could perform five separate scopes of work. (Rec. Doc. 111 at 5-6). VMC argues that 84 Lumber does not meet the burden for a new trial because whether VMC's reliance was reasonable constitutes a question of fact, and 84 Lumber cannot demonstrate that the jury's verdict was clearly contrary to Louisiana Law or to the evidence admitted in this case.

## III. LAW AND ANALYSIS

### A. Standard of Review: Rules 50 & 59

A Rule 50 judgment as a matter of law is appropriate with respect to a given issue if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing]

party on that issue." Fed. R. Civ. P. 50(a)(1).  "This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004). In applying this standard, "the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions." *Id.*

Rule 59 provides that a new trial may be granted "on all or part of the issues...in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).  Although Rule 59 does not list specific grounds for a new trial, the United States Court of Appeals for the Fifth Circuit has held that a new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (internal citations omitted); *see also McFadden v. Wal-Mart Stores*, 2006 WL 3087164, at *2 (E.D. La. Oct. 27, 2006).

### B. Analysis

The jury returned a verdict of $200,000 in favor of VMC, finding that VMC had satisfied the elements of detrimental reliance under Article 1967 of the Louisiana Civil Code. "Detrimental reliance requires (1) a representation by conduct or word, (2) justifiable reliance on the representation, and (3) a change in position to the plaintiff's detriment as a result of the reliance."  *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004); *see Suire v Lafayette City-Parish Consol. Gov't*, 907 So. 2d 37, 59. "Significantly, to prevail on a detrimental reliance claim, Louisiana Law does not require proof

of a formal, valid, and enforceable contract." *Suire*, 907 So. 2d at 59.    Indeed, detrimental reliance "usually functions when no written contract or an unenforceable contract exists between the parties." *Drs. Bethea, Moustoukas and Weaver LLC*, 376 F.3d at 403.   "Rather, the existence of a promise and a reasonable reliance on that promise to one's detriment are the only requirements." *Percy J. Matherne Contractor Inc. v. Grinnell Fire Protection Systems Co.*, 915 F. Supp. 818, 824 (M.D. La. 1995).

84 Lumber's arguments center on the contention that VMC's reliance was unreasonable, but this is a fact-laden determination that should normally be left to the factfinder.  Thus, from a launching point, the Court is remiss to disturb such a factual determination.  84 Lumber first argues that VMC's reliance claim was unreasonable under Louisiana Law because the parties contemplated a written, formal agreement.  84 Lumber cites *JCD Marketing Company* and *Carter* as support for this argument, but 84 Lumber misapplies those facts to the instant case.  As already noted in a prior Order & Reasons, the *JCD Marketing Company* court stated that a general contractor's reliance on a subcontractor's bid "presents classic facts suggesting the need for protecting the general contractor from a careless and sometimes reckless subcontractor who felt no responsibility for a bid that his general contractor had incorporated into an overall bid." 812 So.2d at 840.  *See* Rec. Doc. 63 at 11.  The *JCD Marketing Company* court stressed that "the factual scenario presented in the [*JCD Marketing Company*] case, however, does not resemble the contractor bid cases." *Id.*  In *JCD Marketing Company*, the plaintiff had sought to book a bloc of hotel rooms from the Defendant. *Id.* at 836-37.  After plaintiff had signed and returned the booking contract, the defendant realized the requested dates fell on Super Bowl weekend and refused to sign the contract. *Id.* at 837.  The court affirmed the trial court's dismissal of

plaintiff's detrimental reliance claim, finding that the parties intended to enter into a written contract and were thus precluded from recovering under Article 1967.  *Id.* at 841.

Here, by contrast, the parties both presented witnesses, including Daniel Voelkel and Leslie Lamonte, who testified that it is industry custom for subcontractors and vendors to submit irrevocable bids with the intention that the general contractor will rely on those bids when formulating its own bid.  Indeed, Ms. Lamonte testified that 84 Lumber relied on subcontractors' and vendors' bids when it compiles its bids.  While the parties intended to ultimately enter into a formal contract, the testimony showed the parties both understood that the initial promise, the bid, would control until after VMC's proposal had been accepted and the parties had finalized the terms of their contract.  This situation differs from that in *JCD Marketing Company*, where the parties did not intend to be bound by any promises other than the written contract.  Rather, industry practice dictated that the bid submitted by 84 Lumber would be irrevocable and would bind the parties if accepted by the Project.  As such, the Court is not persuaded by 84 Lumber's argument that VMC's reliance was unreasonable as a matter of law because the parties contemplated a written agreement.

84 Lumber next argues that VMC's reliance was unreasonable because it engaged in bid shopping.  First, it should be noted that all of the case law that 84 Lumber cites involves Texas, and not Louisiana, law.  The evidence at trial also indicates that there was a sufficient evidentiary basis for the jury's findings.  During 84 Lumber's presentation to the jury, 84 Lumber highlighted the January 2013 emails and argued that these communications demonstrated that VMC did not rely on 84 Lumber's email.  To counter 84 Lumber's presentation, VMC's Daniel Voelkel testified that those emails were not indicative of bid shopping, and that VMC wanted 84 Lumber to do the work because they were the only subcontractor who could perform that scope

of work.  Further, Mr. Voelkel testified that he asked about the possibility of 84 Lumber performing additional window work, but that this did not affect the underlying bid.  He also testified that any clarification email was in response to 84 Lumber's notification of a price increase.  Based on this competing evidence, the jury held that VMC relied on 84 Lumber's bid and that the reliance was reasonable, and the Court finds no reason to disturb the jury's finding.

In sum, considering all of the testimony and evidence presented at trial with respect to whether VMC's reliance on 84 Lumber's bid was reasonable, and drawing all reasonable inferences in favor of VMC, the Court concludes that the jury's verdict does not lack a "legally sufficient evidentiary basis." Fed. R. Civ. P. 50(a).  The jury merely disagreed with 84 Lumber's interpretation and believed VMC's version, and this is not sufficient to satisfy the Rule 50 standard.  The Court further concludes that not one of the jury's findings on any of the claims submitted to it is against the weight of the evidence.  The Court also declines to grant Plaintiff's request for Rule 59, finding this case has been litigated fairly and the ends of justice have undoubtedly been served.

## IV. CONCLUSION

For the aforementioned reasons, 84 Lumber's Renewed Motion for Judgment as a Matter of Law, or in the alternative, Motion for New Trial.  (Rec. Doc. 109) is **DENIED**.

New Orleans, Louisiana this 15th day of July, 2015.

UNITED STATES DISTRICT JUDGE